**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| JANET GURWELL AND BRAD SYLVIA, individually and on behalf of all similarly situated individuals, | Case No: _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| v. | |
| SEAWORLD PARKS & ENTERTAINMENT, INC., A Florida Corporation | |
| Defendant. | |

Plaintiffs Janet Gurwell and Brad Sylvia, by their undersigned counsel, file this Class Action Complaint on behalf of themselves and a class of all similarly situated individuals against SeaWorld Parks & Entertainment, Inc. ("Defendant"). Plaintiffs base the forgoing allegations upon personal information and belief, the investigation of counsel, and states the following:

## <u>INTRODUCTION</u>

1.      Defendant is gouging consumers by charging them for services never received. Adding insult to injury, Defendant is doing this at a time when unemployment is skyrocketing and many consumers are out of work due to COVID-19. Defendant's opportunistic conduct is unconscionable, immoral, and violative of the law.







2.      Defendant owns some of the largest and most popular theme park destinations in North America. In 2017 alone, Busch Gardens Tampa Bay had 3.9 million visitors.[1]

3.      In 2019, Defendant generated approximately $1.4 billion in revenue.[2]

4.      On March 12, 2020, Virginia Governor Ralph Northam declared a state of emergency due to the COVID-19 pandemic.[3]

5.      On March 13, 2020, President Donald Trump declared a state of emergency due to the COVID-19 pandemic.[4]

6.      On March 16, 2020, as a preventative measure, Defendant closed down all of its Parks, including Busch Gardens in Williamsburg, Virginia and Tampa, Florida (the "Parks").

7.      During the time the Parks have been closed, no patrons have been allowed to enter.

8.      Defendant sells annual memberships for the Parks. These annual memberships entitle members to use the Parks whenever they want; however, while the Parks have been shut down, none of these members could utilize any of the services offered at the Parks.

9.      Yet, Defendant continues to charge thousands Parks members monthly fees, even though the Parks are closed.

10.      During this time, Defendant has failed to provide a discount or refund for consumers.

11.      Plaintiffs bring this class action on behalf of all similarly situated Parks members, who Defendant continues to charge, even though the Parks remain closed.

---

[1] *See,* Amar Hussain, "The Top 20 Amusement Parks in North America [Includes Map]," UPGRADED POINTS, https://upgradedpoints.com/best-amusement-parks-in-north-america/ (last visited June 18, 2020).

[2] *See,* Bea Mitchell, "SeaWorld Reports Higher Attendance and Revenue in 2019," BLOOLOOP, https://blooloop.com/news/seaworld-attendance-revenue-increase/ (last visited June 18, 2020).

[3] *See* "Governor Northam Declares State of Emergency, Outlines Additional Measures to Combat COVID-19," https://www.governor.virginia.gov/newsroom/all-releases/2020/march/headline-853537-en.html (last visited June 18, 2020).

[4] *See* Donald J. Trump, "Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak," https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (last visited June 18, 2020).

12.     Plaintiffs seek injunctive relief and restitution against Defendant for its deceptive, unfair, unlawful, and fraudulent decision to continue to charge Parks members in violation of the Virginia Consumer Protection Act, Virginia Statutes §59.1-196, *et seq.,* Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §§ 501.201, *et seq.*, and the common law. Compliance with remedial statutes like those underlying this lawsuit will benefit Plaintiffs, the class, consumers, and the general public.

## PARTIES

13.     Plaintiff Janet Gurwell is an individual residing in Suffolk, Virginia. Plaintiff Gurwell currently holds a monthly Parks membership, paying approximately $20 per month. Plaintiff Gurwell bought this membership so that she could access the Parks whenever she wanted. Even though the Parks are closed, thereby preventing Plaintiff Gurwell from accessing the Parks, Defendant continues to charge Plaintiff Gurwell's account in the full monthly membership amount. Additionally, Defendant has not refunded Plaintiff Gurwell any part of the monthly fees she has paid while the Parks have been closed. Plaintiff Gurwell even contacted Defendant for a refund, which she never received. Plaintiff Gurwell signed up for Defendant's month-to-month membership with the belief that she would have access to Defendant's Parks on the dates provided by Defendant in accordance with her membership package. Had Plaintiff Gurwell known she would not have access to Defendant's Parks, she would not have paid for the membership, or would not have paid for it on the same terms. Plaintiff Gurwell continues to be harmed, by incurring monthly fee charges, while Defendant's Parks remain closed.

14.     Plaintiff Brad Sylvia is an individual residing in Suffolk, Virginia. Plaintiff Sylvia currently holds a monthly Parks membership, paying approximately $15 per month. Plaintiff Sylvia bought this membership so that he could access the Parks whenever he wanted. Even though the Parks are closed, thereby preventing Plaintiff Sylvia from accessing the Parks, Defendant continues to charge Plaintiff Sylvia's account in the full monthly membership amount. Additionally, Defendant has not refunded Plaintiff Sylvia any part of the monthly fees he has paid while the Parks have been closed. Plaintiff Sylvia signed up for Defendant's month-to-month

membership with the belief that he would have access to Defendant's Parks on the dates provided by Defendant in accordance with her membership package. Had Plaintiff Sylvia known he would not have access to Defendant's Parks, he would not have paid for the membership, or would not have paid for it on the same terms. Plaintiff Sylvia continues to be harmed, by incurring monthly fee charges, while Defendant's Parks remain closed.

15.     Sea World Parks & Entertainment, Inc., is a Delaware corporation headquartered in Florida. Sea World Parks & Entertainment, Inc. maintains its principal place of business at 6240 Sea Harbor Drive, Orlando, Florida 32821. Sea World Parks & Entertainment, Inc., directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of Virginia.

16.     In committing the wrongful acts alleged herein, Defendant planned and participated in a scheme that deceptively, unfairly, unlawfully, and fraudulently charged the Parks members' full monthly membership fees while the Parks are closed due to COVID-19. Defendant's advertising and marketing of the Parks as being accessible as advertised with each membership package, misrepresented and omitted the true nature of Defendant's services. As a result, Defendant's acts are violative of Virginia, Florida, and the common law.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

18.     Pursuant to 28 U.S.C. Section 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiffs Janet Gurwell and Brad Sylvia are citizens of Virginia who reside in Suffolk, Virginia; Defendant made the challenged false representations to Plaintiffs in

this District; Plaintiffs purchased their memberships in this District; and Plaintiffs were deprived use of their memberships within this District. Moreover, Defendant receives substantial compensation from sales in this District, and Defendant made numerous misrepresentations and omissions which had a substantial effect in this District.

19.     Pursuant to, among other things, VA Code Ann. § 8.01-328.1, Defendant is subject to personal jurisdiction in Virginia based upon sufficient minimum contacts which exist between Defendant and Virginia.  Defendant is authorized to do and is doing business in Virginia.

## **FACTUAL BACKGROUND**

20.     Defendant continues to charge Parks members full membership fees, even though the Parks have been closed since March 16, 2020, due the COVID-19 pandemic that unprecedently affected the United States' and global economies.

21.     "Sea World" is a leading name in the theme park industry and currently has 12 locations throughout the United States, including the Busch Gardens theme parks located in Williamsburg, Virginia and Tampa, Florida.

22.     Busch Gardens in Tampa Florida is extremely popular, hosting nearly 4 million visitors in 2017 alone.[5] Moreover, "Busch Gardens in Williamsburg, Virginia is the world's most beautiful theme park, as voted year after year since 1990."[6]

23.     To access the Parks, the vast majority of customers sign up for an annual membership, paying a set fee every month. Monthly annual membership fees range between $8.00 to $29.99 per month, depending on level purchased and any applicable incentives.

24.     Customers purchase annual memberships so that they can use the park whenever they want.

---

[5] See Hussain, *supra* note 1.
[6] See, Defendant's website, https://buschgardens.com/williamsburg/park-info/ (last visited on June 18, 2020).

25.     Members must leave a credit card or debit card on file, in order to purchase and use Defendant's memberships. Defendant automatically charges its members' cards on file on a monthly basis.

26.     On March 12, 2020, Virginia Governor Ralph Northam declared a state of emergency due to the COVID-19 pandemic.[7]

27.     On March 13, 2020, President Donald Trump declared a state of emergency due to the COVID-19 pandemic.[8]

28.     On March 16, 2020, Defendant announced that all of its Parks would be closed through the end of March as a result of the COVID-19 pandemic.[9] A true and correct representation of Defendant's closure announcement is depicted below, with pertinent provisions circled in red.



29.     Since the Parks have been closed down, members have not been able to use any of the Parks' services.

---

[7] *See* fn. 3.
[8] *See* fn. 4.
[9]https://www.facebook.com/BuschGardensTampaBay/photos/a.111637570238/10157734581150 239/?type=3&theater (last visited on June 18, 2020).

30.     Unlike other companies, such as insurance companies and fitness centers, Defendant continues to charge its members the full monthly payment fee, despite the fact that its customers, like Plaintiffs, are not permitted to use their membership as a result of the Parks' closures. Defendant failed to provide consumers with any sort of discount or refund.

31.     Defendant refuses to reimburse or provide discounts to consumers with monthly memberships, like Plaintiffs, for time in which they have not been able to access the Parks.

32.     Instead, Defendant provides other options for its members. However, none of the options Defendant provides its members include refunds for the time period the Parks were closed as a result of COVID-19.

33.     Defendant recently reopened Busch Gardens Tampa on June 11, 2020. But, to enter the Park, "all guests are required to make a reservation prior to visiting."[10] Defendant plans to force all guests to make reservations when Busch Gardens Williamsburg opens as well.

34.     This restricts annual members' use and enjoyment of the Parks. It also contradicts the reason members bought an annual pass in the first place: to use the Parks whenever they want. Defendant has not provided members with a discount for forcing them to make reservations to enter the Parks.

35.     Defendant continues to charge its members the monthly membership, as Defendant is in possession of its members' debit/credit card information. Therefore, Defendant continues to unfairly profit from its members membership fees during a time when many members are hurting financially.

36.     The only reason Defendant's customers, such as Plaintiffs, choose to pay for an annual membership is to gain access to Defendant's Parks. Plaintiffs have not had access to Defendant's Parks since March 16, 2020. Yet, Defendant continues to charge Plaintiffs and other members monthly charges for park access they do not have, and refuses to reimburse Plaintiffs and its other members for payments they already made while the Parks are closed.

---

[10] *See* RESERVE YOUR DAY, https://buschgardens.com/tampa/tickets/reservations/ (last visited June 18, 2020).

37.     Plaintiffs seek relief in this action individually, and on behalf of all of Defendant's customers that have paid or were charged fees while Defendant's Parks were closed as a result of COVID-19, for violations under the Virginia Consumer Protection Act, Virginia Statutes §59.1-196, *et seq.,* Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §§ 501.201, *et seq.*, and the common law.

## CLASS ACTION ALLEGATIONS

38.     Plaintiffs bring this action individually and on behalf of a class of all other persons similarly situated. The Class which Plaintiffs seek to represent comprises: "All persons who were charged fees for memberships while the Parks were closed." Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

39.     The Class is so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the millions. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.

40.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

a.     Whether Defendant's conduct is a fraudulent and unlawful act or practice within the meaning of Virginia Statutes Section 59.1-196, *et seq.*;

b.     Whether Defendant's conduct is an unfair and deceptive act or practice within the meaning of Florida Statutes Section 501.201, *et seq.*;

c.     Whether Defendant was unjustly enriched at the expense of Plaintiffs and the Class members;

d.     Whether Defendant committed common law fraud;

e.     Whether Defendant breached an implied warranty to Plaintiffs and Class members;

f.   Whether Defendant intentionally misrepresented material facts to Plaintiffs and Class members; and,

g.   Whether Defendant negligently misrepresented material facts to Plaintiffs and Class members.

41.   Plaintiffs' claims are typical of the claims of the Class, and Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained competent and experienced counsel in class action and other complex litigation.

42.   Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's actions. Plaintiffs purchased memberships which they believed would grant them access to Defendant's Parks on the dates provided by Defendant in accordance with each Plaintiffs corresponding membership package.  Plaintiffs would not have purchased the memberships if they had known that they would be charged for their membership fees when they were barred from entry into Defendant's Parks.

43.   A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for Class members to prosecute their claims individually.

44.   The trial and litigation of Plaintiffs' claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

45.   Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant.

46.     Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## COUNT ONE
**Unfair or Deceptive Act or Practice in Violation of the**
**Virginia Consumer Protection Act,**
**Virginia Statutes §§ 59.1-196, *et seq*.**

47.     Plaintiffs repeat and reallege the allegations set forth above and incorporate the same as if set forth herein at length.

48.     Plaintiffs bring this cause of action pursuant to the Virginia Consumer Protection Act ("VCPA"), § 59.1-196, of the Code of Virginia, 1950, as amended, *et seq.*, which was enacted to prohibit and protect Virginia citizens from deceptive and unfair conduct, by Plaintiffs and the Class consisting of all persons who were charged fees for memberships while the Parks were closed.

49.     The VCPA provides that it "shall be applied as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." § 59.1-197. Further, "fraudulent acts or practices …in connection with a consumer transaction are hereby unlawful." § 59.1-200.

50.     Defendant's advertising that the Parks would be accessible, and that its customers would have access to the Parks upon paying a membership fee is fraudulent, because Defendant in fact closed all of the Parks while continuing to charge its customers the full price of membership.

51.     Defendant's acts alleged herein violated and continue to violate Section 59.1-200 (8) of the VCPA by advertising the Parks memberships "with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised."

52.     Defendant's acts alleged herein constitute "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" under Section 59.1-200 (14) of the VCPA.

53.     Defendant's acts alleged herein violated and continue to violate Section 59.1-200 (16) of the VCPA by "[f]ailing to disclose all conditions, charges, or fees relating to: [t]he return of goods for refund, exchange, or credit."

54.     Defendant is a supplier within the meaning of Section 59.1-198 of the VCPA.

55.     Plaintiffs and members of the Class were consumers within the meaning of Section 59.1-198 of the VCPA, and are therefore entitled to relief under the VCPA in accordance with Section 59.1-204.

56.     Plaintiffs' and the Class members' purchase of Parks memberships from Defendant was a "consumer transaction" within the meaning of Section 59.1-198 (1) of the VCPA.

57.     Plaintiffs and the Class suffered injuries in fact and have lost money or property as result and in reliance upon Defendant's acts as alleged herein because (1) Plaintiffs and the Class would not have purchased the memberships for Defendant's Parks but for the representations and omission of a warning that Defendant would continue charging customers' credit cards and debit cards while the Parks remain closed; (2) they would not have purchased park memberships on the same terms absent Defendant's representations and omissions; (3) they paid a price premium for Defendant's park membership based on Defendant's misrepresentations and omissions; and (4) Defendant's park memberships did not have the characteristics, benefits, or quantities promised.

58.     Pursuant to §59.1-204, of the Code of Virginia, 1950, as amended, *et seq.,* Plaintiffs and the Class members seek recovery of actual damages, treble damages, and attorney's fees and court costs.

59.     Plaintiffs also seek injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendant, including, but not limited to, an order enjoining Defendant from continuing to charge its customers for membership services when they do not have access to Defendant's Parks.

**COUNT TWO**
**Unfair or Deceptive Act or Practice in Violation of the**
**Florida Deceptive and Unfair Trade Practices Act,**
**Florida Statutes §§ 501.201, *et seq.***

60.     Plaintiffs repeat and reallege the allegations set forth above and incorporate the same as if set forth herein at length. Plaintiffs bring this cause of action pursuant to Florida Statutes Section 501.201, *et seq.*, on behalf of Plaintiffs and the Class consisting of all persons who were charged fees for memberships while the Parks were closed.

61.     Florida Statutes Section 501.204 provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful."

62.     Defendant's conduct as alleged herein violated, and continues to violate the Florida Deceptive and Unfair Trade Practices Act.

63.     Defendant fraudulently deceived Plaintiffs and the Class by representing and omitting material facts related to annual memberships. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiffs and the Class, specifically by advertising that Parks would be accessible on the dates provided by Defendant in accordance with each corresponding membership package, and that its customers would have access to the Parks upon paying a membership fee.

64.     Defendant unfairly closed its Parks while continuing to charge its customers the full price of their membership.

65.     Defendant knows that the misrepresentations and omissions alleged herein are fraudulent and unfair.

66.     Plaintiffs and the Class suffered injuries in fact and have lost money or property as result and in reliance upon Defendant's acts as alleged herein because (1) Plaintiffs and the Class would not have purchased the memberships for Defendant's Parks but for the representations and omission of a warning that Defendant would continue charging customers' credit cards and debit cards while the Parks remain closed; (2) they would not have purchased park memberships on the

12

same terms absent Defendant's representations and omissions; (3) they paid a price premium for Defendant's park membership based on Defendant's misrepresentations and omissions; and (4) Defendant's park memberships did not have the characteristics, benefits, or quantities promised.

67.     As alleged in the preceding paragraphs, the misrepresentations by Defendant of the material facts detailed above constitute a deceptive trade practice that is likely to mislead consumers, and therefore an unlawful act, within the meaning of Florida Statutes Section 501.201, *et seq*.

68.     Defendant's acts alleged herein are immoral, unethical, and substantially injurious, and therefore unfair, acts toward consumers.

69.     Pursuant to Florida Statutes Section 501.211(2) Plaintiffs seek actual damages, plus attorneys' fees and costs.

70.     Pursuant to Florida Statutes Section 501.211(1), Plaintiffs seek declaratory judgment that the above-described wrongful acts violate the Florida Deceptive and Unfair Trade Practices Act. Plaintiffs also seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendant, including, but not limited to, enjoining Defendant from continuing to charge its customers for membership services when they do not have access to Defendant's Parks.

## COUNT THREE
**Unjust Enrichment**

71.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs, and incorporate the same as if set forth herein at length.

72.     As a result of Defendant's wrongful and deceptive conduct, Plaintiffs and the Class have suffered a detriment while Defendant has received a benefit.

73.     Plaintiffs and the Class conferred benefits on Defendant by paying, and being charged, membership fees while the Parks were and continue to stay closed.

74.     Defendant has knowledge of such benefits.

75.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class's purchases, which retention under these circumstances is unjust and inequitable.

76.     Defendant should not be allowed to retain the profits generated and profits realized from charging its customers membership fees while the Parks were and continue to stay closed.

77.     Allowing Defendant to retain these unjust profits is inequitable and would offend traditional notions of justice and fair play and induce companies to misrepresent key characteristics of their services in order to increase sales.

78.     Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiffs and the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class members for its unjust enrichment.

## COUNT FOUR
### Common Law Fraud

79.     Plaintiffs repeat and reallege all of the allegations contained in the preceding paragraphs and incorporate the same as if set forth herein at length.

80.     Defendant has willfully, falsely, and knowingly misrepresented that its Parks are accessible during certain days of the year. However, Defendant in fact charges full price for annual memberships even when the Parks are closed to the public. These misrepresentations and omissions were made with knowledge of their falsehood.

81.     The misrepresentations and omissions made by Defendant, upon which Plaintiffs and the Class reasonably and justifiably relied, were intended and actually induced Plaintiffs and the Class to purchase annual Parks memberships.

82.     Defendant's fraudulent actions caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT FIVE
### Conversion

83.    Plaintiffs repeat and reallege the allegations set forth above and incorporate the same as if set forth herein at length.

84.    Plaintiffs and the Class had a right to retain their membership fees while all of Defendant's parks were and remain closed.

85.    Defendant intentionally charged Plaintiffs' and Class members' debit and credit cards in the full amount of the monthly membership fees while the Parks were closed.

86.    Plaintiffs and Class members did not consent to Defendant charging their debit and credit cards while the Parks are closed and Defendant did so without legal justification.

87.    Each charge of Plaintiffs' and Class members' credit and debit cards caused Defendant to deprive Plaintiffs and Class members of their interest in the specifically identifiable funds reflected by the same.

88.    Plaintiffs and Class members were harmed through Defendant's charging of their debit and credit cards.

89.    Defendant's conduct was a substantial factor in causing Plaintiffs' and the Class harm.

## COUNT SIX
### Breach of Contract

90.    Plaintiffs repeat and reallege the allegations set forth above and incorporate the same as if set forth herein at length.

91.    Defendant entered into contracts with Plaintiffs and the Class to provide access to park facilities in exchange for the payment of membership fees.

92.    Defendant has breached these contracts by continuing to charge Plaintiffs' and Class members' debit and credit cards while the parks remain closed.

93.    As a result, Plaintiffs and the Class have suffered an injury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Class defined herein, pray for judgment and relief on all Causes of Action as follows:

A.     For an order enjoining Defendant from engaging in the unfair, deceptive, misleading, and fraudulent practices complained of herein;

B.     Actual damages against Defendant in an amount to be determined at trial, together with pre- and post-judgment interest at the maximum rate allowable by law on any amounts awarded;

C.     Restitution and/or disgorgement in an amount to be determined at trial;

D.     For pre-judgment interest from the date of filing this suit;

E.     Treble damages;

F.     Punitive damages;

G.     Reasonable attorney fees and costs; and

H.     Such other and further relief as the Court may deem necessary or appropriate.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs, individually and on behalf of the members of the Class defined herein, hereby demand a trial by jury in the above-captioned action of all issues triable by jury.


DATED: June 22, 2020                        **SILVERMAN THOMPSON**
                                            **SLUTKIN WHITE**

                                            /s/ Jodie E. Buchman_____
                                            Jodie E. Buchman, Esq. VSB No.91929
                                            Pierce C. Murphy, Esq., VSB No. 87842
                                            jbuchman@silvermanthompson.com
                                            pmurphy@silvermanthompson.com
                                            201 N. Charles St., 26th Floor
                                            Baltimore, MD 21201
                                            Tel: (410) 385-2225
                                            Fax: (410) 547-2432

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
(*pro hac vice application forthcoming*)
rclarkson@clarksonlawfirm.com
Matthew T. Theriault (SBN 244037)
(*pro hac vice application forthcoming*)
mtheriault@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)
(*pro hac vice application forthcoming*)
bsodaify@clarksonlawfirm.com
Zach Chrzan (SBN 329159)
(*pro hac vice application forthcoming*)
zchrzan@clarksonlawfirm.com
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*