**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| JANET GURWELL AND BRAD SYLVIA, individually and on behalf of all similarly situated individuals, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.:  2:20-cv-00312-RGD-LRL |
| | ) | |
| SEAWORLD PARKS & ENTERTAINMENT, INC., | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SEAWORLD PARKS &
ENTERTAINMENT, INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND FACTUAL BACKGROUND .......................................................1

II. ARGUMENT .................................................................................................................6

A.  Plaintiffs' VCPA, FDUTPA, and Common Law Fraud Claims (<u>Counts 1-2, 7</u>) Do Not Meet Rule 9(b) Pleading Requirements............................................ 6

    1.  Rule 9(b)'s Heightened Pleading Standard Applies to Plaintiffs' Claims Sounding in Fraud and Requires Particularity. ........................................... 6

    2.  Plaintiffs Do Not Allege Facts Sufficient to State a Claim for Fraud or Violations of the VCPA and the FDUTPA................................................. 7

        a.  Plaintiffs Do Not Allege The Specific Statement At Issue for a Claim of Affirmative Misrepresentation. ...............................7

        b.  Plaintiffs Do Not Sufficiently Allege Omission of a Material Fact. ...................................................................................9

        c.  Plaintiffs Do Not Sufficiently Allege that SeaWorld had a Duty to Disclose...............................................................10

        d.  Plaintiffs' Allegations of "Implied Misrepresentations" are Neither Actionable Affirmative Misrepresentations Nor Material Omissions of Fact...........................................................12

        e.  Plaintiffs Do Not Allege Justified, Reasonable Reliance, Which is Necessary for the Virginia Fraud Claims ......................13

B.  Plaintiffs' VCPA Claim (<u>Count 1</u>) Must be Dismissed as a Matter of Law Because SeaWorld Passes are Not "Goods" or "Services" under the Act............ 15

C.  Plaintiffs' FDUTPA Claim (<u>Count 2</u>) Must be Dismissed Because Plaintiffs Lack Standing to Bring Out of State Claims........................................ 16

D.  Plaintiffs' Claims for Declaratory Relief (<u>Counts 3-4</u>) Should Be Dismissed............................................................................................................. 18

E.  Plaintiffs' Claim for Breach of Contract (<u>Count 5</u>) Must Be Dismissed As a Matter of Law Because SeaWorld Had a Contractual Right to Collect Payments. ............................................................................................................. 23

F.  Plaintiffs' Unjust Enrichment Claim (<u>Count 6</u>) Is Incompatible with Their Contract Claim. ................................................................................................... 25

G.    Plaintiffs' Claim for Conversion (<u>Count 8</u>) is Based on an Alleged Breach of a Contractual – Not Common Law – Duty. ....................................................... 27

H.    Plaintiffs' Requests for Injunctive Relief and Punitive Damages Must Be Dismissed. ........................................................................................................... 28

    1.    Injunctive Relief is Not Available under the VCPA. ................................ 28

    2.    Plaintiffs Do Not Have Article III Standing to Seek Injunctive Relief under the FDUTPA. ................................................................................. 28

    3.    Plaintiffs Fail to Allege Facts to Support a Claim for Punitive Damages. 30

III.    CONCLUSION ................................................................................................................ 30

## **TABLE OF AUTHORITIES**

**Cases**

*Adair v. EQT Prod. Co.*, 320 F.R.D. 379 (W.D. Va. 2017)...........................................................27

*Adardour v. American Settlements, Inc.*, 2009 WL 1971458 (E.D. Va. July 2, 2009) ........................................................................................................................................14

*Allen Realty v. Holbert*, 318 S.E.2d 592 (Va. 1984)....................................................................10

*Applied Interact, LLC v. Continental Airlines, Inc.*, 2008 WL 177740 (E.D. Va. Jan. 17, 2008) .................................................................................................................................8

*Arnlund v. Deloitte & Touche LLP*, 199 F.Supp. 2d 461 (E.D. Va. 2002)...................................29

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................12

*Baker v. Elam*, 883 F. Supp. 2d 576 (E.D. Va. 2012)....................................................................6

*Bakery & Conf. Union Indus. Int'l Pension Fund v. Just Born, Inc.*, 888 F.3d 696 (4th Cir. 2018)............................................................................................................................25

*Bank of Montreal v. Signet Bank*, 193 F.3d 818 (4th Cir. 1999) ........................................... 10-11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).................................................................12

*Breton, LLC v. Lincoln Nat. Life Ins. Co.*, 805 F. Supp. 2d 251 (E.D. Va. 2011)........................23

*Bunn v. Offutt*, 222 S.E.2d 522 (Va. 1976) ................................................................................15

*Burger King Corp. v. Austin*, 805 F. Supp. 1007 (S.D. Fla. 1992)...............................................30

*Carlucci v. Han*, 907 F. Supp. 2d 709 (E.D. Va. 2012)......................................................... 10-11

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .......................................................................28

*CMA CGM S.A. v. Leader Int'l Express Corp.*, 2020 WL 4249705 (E.D. Va. July 23, 2020) ...........................................................................................................18-19, 21-22

*Coker Int'l, Inc. v. Burlington Ind., Inc.*, 747 F. Supp. 2d 1168 (D.S.C. 1990) ....................19, 21

*Condo. Serv., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo, Inc.*, 709 S.E. 2d. 163 (Va. 2011)........................................................................................................27

*Costello v. Larsen*, 29 S.E. 2d 856 (Va. 1944) ...........................................................................11

*Cozzarelli v. Inspire Pharma. Inc.*, 549 F. 3d 618 (4th Cir. 2008)................................................6

*Davis v. Powertel, Inc.*, 776 So. 2d 971 (Fla. Dist. Ct. App. 2000)................................13

*Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175 (4th Cir. 2000) ................................................................................................................24

*Edmonson v. Eagle Nat'l Bank*, 922 F. 3d 535 (4th Cir. 2019) ....................................6

*Elliot v. Great Point Partners, LLC*, 2011 WL 63657 (E.D. Va. Jan. 5, 2011)............13

*Foremost Guaranty Corp. v. Meritor Sav. Bank*, 910 F.2d 118 (4th Cir. 1990) ..........14

*Friends of Earth, Inc. v. Laidlaw Entl. Servs.*, 528 U.S. 167 (2000)......................16, 28

*Gentry v. Hyundai Motor America, Inc.*, 2017 WL 1289050 (W.D. Va. April 6, 2017) ................................................................................................................3, 7

*Gentry v. Hyundai Motor America, Inc.*, 2017 WL 354251 (W.D. Va. Jan. 23, 2017) ................................................................................................................8

*Green v. McNeil Nutritionals, LLC*, 2005 WL 3388158 (Fla. 4th Jud. Cir. Nov. 16, 2005) ...........................................................................................................26

*Griffin v. Dep.'t of Labor Federal Credit Union*, 912 F.3d 649 (4th Cir. 2019)...........28

*Hampton Roads Bankshares, Inc. v. Harvard*, 781 S.E.2d 172 (Va. 2016) ...........18, 20

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999)..............7

*Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614 (4th Cir. 1999)......................10

*In re Interior Molded Doors Antitrust Lit.*, 2019 WL 4478734 (E.D. Va. Sept. 18, 2019) .........................................................................................................16-17

*Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571 (E.D. Va. 2003)..........................................................................................9

*Jewell v. Sports USA, Inc.*, 19 Va. Cir. 19 (1989) ................................................20-21

*Kouball v. SeaWorld Parks & Entertainment, Inc.*, 2020 WL 5408918 (S.D. Cal. Sept. 9, 2020) .......................................................................................*Passim*

*Kraft Foods N. Am., Inc. v. Banner Eng'g & Sales, Inc.*, 446 F. Supp. 2d 551 (E.D. Va. 2006)..............................................................................................22

*Lance v. Wade*, 457 So.2d 1008 (Fla. 1984)........................................................13

*Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp. 2d 1311 (M.D. Fla. 2013) ..................27

*Levinson v. Mass. Mut. Life Ins. Co.*, 2006 WL 3337419 (E.D. Va. Nov. 9, 2006)......26

*Lewis v. Guthartz*, 428 So.2d 222 (Fla. 1982) ..............................................................29

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992).............................................................16

*Maines v. Guillot*, 2016 WL 3556258 (W.D. Va. Jun. 16, 2016)....................................9

*Marty v. Anheuser-Bush Companies, LLC*, 43 F. Supp. 1333 (S.D. Fla. 2014) .................... 28-29

*Mayo v. Wells Fargo Bank, N.A.*, 30 F. Supp. 3d 485 (E.D. Va. 2014) .......................25

*Mgtm. Enterprises, Inc. v. Thorncroft Co., Inc.*, 416 S.E.2d 229 (Va. 1992)...............15

*Morris v. Wachovia Securities, Inc.*, 277 F. Supp. 2d 622 (E.D. Va. 2003)...............7, 9

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*, 65 F. 3d 1113 (4th Cir. 1995)...........................................................................................15

*Nossen v. Hoy*, 750 F. Supp. 740 (E.D. Va. 1990) ......................................................26

*Opera Co. of Boston, Inc. v. Wolf Trap Fnd'n*, 817 F.2d 1094 (4th Cir. 1987) ...........19

*Ostolaza-Diaz v. Countrywide Bank, N.A.*, 360 F. Appx 504 (4th Cir. 2010)..............14

*Out of Chaos, Ltd. v. AON Corp.*, 15 F. Appx. 137 (4th Cir. 2001).............................27

*Physicians Committee for Responsible Medicine v. General Mills, Inc.*, 2006 WL 3487651 (E.D. Va. 2006)........................................................................................28

*PNC Bank, N.A. v. Dominion Energy Mgmt.*, 2018 WL 1768061 (E.D. Va. April 11, 2018) ...............................................................................................................14

*Quadros & Assoc., P.C. v. City of Hampton*, 597 S.E.2d 90 (Va. 2004).....................22

*Ramos v. Wells Fargo Bank, NA*, 770 S.E.2d 491 (Va. 2015)....................................24

*RECP IV WG Land Investors LLC v. Capitol One Bank*, 811 S.E.2d 817 (Va. 2018) ...............................................................................................................18

*Rollins, Inc. v. Heller*, 454 So.2d 580 (Fla. 3d DCA 1984)........................................29

*S. USA Life Ins. Co., Inc. v. Foster*, 2019 WL 2110598 (W.D. Va. Apr. 29, 2019)....................10

*Salehi v. Wells. Fargo Bank, N.A.*, 2012 WL 2119333 (E.D. Va. Jan. 11, 2012) ........14

*State Farm Mut. Ins. Co.*, 816 S.E.2d 316 (Va. 2005)................................................13

*Size, Inc. v. Network Solutions, Inc.*, 255 F. Supp. 2d 568 (E.D. Va. 2003)................27

*Space Coast Credit Union v. Merrill Lynch, et al.*, 295 F.R.D. 540 (S.D. Fla. 2013) ....................................................................................................................26

*Station # 2, LLC v. Lynth*, 695 S.E.2d 537 (Va. 2010) ................................................15

*T. Musgrove Const. Co., Inc. v. Young*, 840 S.E.2d 337 (Va. 2020) ...........................29

*Tessler v. NBC Universal, Inc*, 2009 WL 866834 (E.D. Va. March 31, 2009) ...........24

*Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313 (S.D. Fla. 2020) ..........................................6

*Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802 (11th Cir. 1999) .......................29

*U.S. ex rel. Badr v. Triple Canopy, Inc.*, 950 F. Supp. 2d 888 (E.D. Va. 2013), *rev'd in part on other grounds*, 957 F.3d 174 (4th Cir. 2017).................................25

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370 (4th Cir. 2008)........6

*United Leasing Corp. v. Thrid Ins. Corp.*, 440 S.E. 2d 902 (Va. 1994) ......................26

*Van Deusen v. Snead*, 441 S.E.2d 207 (Va. 1994)........................................................10

*Vienna Metro LLC v. Pulte Home Corp.*, 786 F. Supp. 2d 1076 (E.D. Va. 2011) ................18, 21

*W.W.V. Co. v. Black*, 113 Va. 728 (1912)....................................................................15

*White v. Nat'l Union Fire Ins. Co.*, 913 F.2d 165 (4th Cir. 1990)...............................18

*Witthohn v. Federal Ins. Co.*, 164 Fed. Appx. 395, 2006 WL 228621, (4th Cir. 2006) .................................................................................................................... 1-2

*WRH Mortg., Inc. v. S.A.S. Associates*, 214 F.3d 528 (4th Cir. 2000).........................25

*Wynn's Extended Care, Inc. v. Bradley*, 619 Fed. Appx 216 (4th Cir. 2015) ...............6

*Xia Bi v. McAuliffe*, 927 F.3d 177 (4th Cir. 2019)........................................................6

*Zaklit v. Global Linguist Solutions, LLC*, 53 F. Supp.3d 835 (E.D. Va. 2014) .............9

**Statutes**

Va. Code Ann. § 59.1-198 ....................................................................................... 15-16

Va. Code Ann. § 59.1-200 ...........................................................................................28

Va. Code Ann. § 59.1-203 ...........................................................................................28

Va. Code Ann. § 59.1-204(A)................................................................................. 28-29

Va. Code Ann. § 59.1-501.2 ...........................................................................16

**Other Authorities**

CORBIN ON CONTRACTS § 1343 (1952)..........................................................22

Fed. R. Civ. P. 8 .............................................................................................12

Fed. R. Civ. P. 8(a) .....................................................................................5, 24

Fed. R. Civ. P. 9(b) ................................................................................*Passim*

Fed. R. Civ. P. 12(b)(6)...........................................................................7, 28, 30

RESTATEMENT (2D) OF CONTRACTS (1981) § 261................................... 18-20

RESTATEMENT (2D) OF CONTRACTS (1981) § 264....................................18

RESTATEMENT (2D) OF CONTRACTS (1981) § 265................................... 19-20

RESTATEMENT (2D) OF CONTRACTS (1981) § 266....................................20

RESTATEMENT (2D) OF CONTRACTS (1981) § 267....................................20

Defendant SeaWorld Parks & Entertainment, Inc. ("SeaWorld") submits this memorandum in support of its Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"), ECF 23.

## I.     <u>INTRODUCTION AND FACTUAL BACKGROUND</u>

On March 16, 2020, SeaWorld was forced by governmental order arising from the deadly COVID-19 pandemic to temporarily close its parks, including Busch Gardens in Williamsburg, Virginia ("BGW") and Tampa, Florida ("BGT"). The closure protected annual passholders like Plaintiffs against the spread of COVID-19. After the closure, SeaWorld stated that "we are **<u>automatically extending</u>** all active Annual Passes and Membership Products to…[BGW] for a period of **<u>at least as long as the temporary closure</u>**." Ex. A hereto, at 3.[1] Passholders, like Plaintiffs, whose passes renew on a month-to month basis, "will have their payments after the re-opening of the park waived for a period of time equivalent to the length of closure." *Id*. SeaWorld also gave annual passholders complimentary benefit upgrades and other special rewards and events. *Id*. BGW and BGT have since partially reopened.

Nonetheless, Plaintiffs, who previously bought SeaWorld annual passes, claim opportunistically that SeaWorld misled them to believe that the passes entitled them "**<u>to access the Parks whenever [he/she] wanted</u>**." FAC ¶ 23, 24 (emphasis added); *see also id.* ¶¶ 7, 34, 55.[2] According to Plaintiffs, had they known SeaWorld would close BGW during a novel, global

---

[1] The Court may consider SeaWorld's statements in Ex. A because Plaintiffs cited them in the FAC. FAC ¶ 38 (reference to SeaWorld Coronavirus Blog). *See Witthohn v. Federal Ins. Co.*, 164 Fed. Appx. 395, 2006 WL 228621, 396-97 (4th Cir. 2006) (courts may consider documents referred to in a complaint even if not initially attached).

[2] SeaWorld assumes the truth of Plaintiffs' factual allegations only for purposes of this motion. However, many of those factual allegations are not accurate. For example, neither Plaintiff's annual pass entitles them access to any SeaWorld park other than BGW and Water Country USA (in Virginia). Neither pass provides Plaintiffs access to BGT or any other SeaWorld park in Florida.

pandemic, they would not have purchased the passes. *Id.* ¶¶ 23, 24. Plaintiffs also claim that after SeaWorld closed BGW, it sent them monthly "invoices" that falsely implied that BGW was open or that omitted to state that BGW was closed. *Id.* ¶¶ 12-17, 26, 42-44, 48. Neither Plaintiff claims that he/she paid any such "invoice" without knowing that BGW was shut or not fully reopened.

Plaintiffs admit that their relationship with SeaWorld is governed by the installment contracts that SeaWorld attached to its original motion to dismiss and that are frequently referred to in the FAC. *Id.* ¶¶ 63, 71, 77, 111. *See* Exs. B-E hereto.[3] While Plaintiffs executed separate installment contracts years apart, both contracts contain the same essential terms relevant to this litigation:

- The installment contract could not be canceled until the respective Plaintiff made all of the required initial monthly payments and the initial term expired.

- Upon expiration of the initial term, the installment contract continued on a month-to-month basis.

- Once the installment contract began to run monthly, either Plaintiff could cancel at any time.

- SeaWorld was entitled to collect monthly payments through the initial term and thereafter unless and until the respective Plaintiff elected to cancel.

Plaintiff Sylvia entered into a twelve-month initial term installment contract on March 1, 2019. Ex. C hereto at 1. The contract expressly provides that "there are **no refunds** of amounts paid." *Id.* at 2 (emphasis added). As of February 29, 2020, before BGW closed, Sylvia **could cancel at any time** because the initial term had expired. *Id.* at 1; Ex. D hereto, ¶¶ 10-11. Similarly, Plaintiff Gurwell entered into a twenty-four month initial term contract on August 23,

---

[3] This Court may consider the installment contracts without converting this motion into one for summary judgment because they are referenced in the FAC. *See* note 1, *supra*.

2007.  Ex. B hereto at 1; Ex. D hereto, ¶ 4.  Gurwell's installment contract is expressly made

"**non-refundable**."  Ex. B hereto at 1. (emphasis added).  As of August 22, 2009, before BGW

closed, Gurwell **could cancel the contract at any time** because the initial term had expired.

*Id.*at 1; Ex. D hereto, ¶ 6.  Neither Plaintiff has alleged they cancelled their installment contracts

or are unaware of their ability to cancel.

The FAC is the second time Plaintiffs have attempted to plead their case, this time with

knowledge of the defects that SeaWorld underscored in its original motion to dismiss.  ECF 21 &

22.  Not only have Plaintiffs not cured those defects, they have, in some respects, made them

worse.  While the FAC is styled as a purported class action and is filled with allegations with

respect to what class members knew or did not know, FAC ¶¶ 8-1, 14-15, 19-20, 30, 34, 39, 45,

49-56, none of these vague allegations is connected to either Plaintiff individually.  For example,

the FAC alleges that BGT currently requires reservations and BGW allegedly charges an

entrance fee for its limited events, but does not allege that either Plaintiff has confronted these

alleged issues.  *Id*. ¶¶ 54-55.  To proceed in this case, Plaintiffs must have a viable cause of

action in their own right and cannot hide behind nebulous allegations concerning unnamed

"members."  *Gentry v. Hyundai Motor America, Inc.*, 2017 WL 1289050, *3 (W.D. Va. April 6,

2017) ("In considering a motion to dismiss…a class action claim…[courts] look to whether the

named plaintiff has alleged sufficient facts regarding themselves.") (internal quotation omitted).

Furthermore, even though there is no dispute as to the terms of the installment contracts,

Plaintiffs attempt to create the false impression that SeaWorld is, in effect, stealing their money

by forcing them to pay for access to a park that is closed.  But the facts alleged and referred to in

the FAC establish that this is not true.  Plaintiffs have not alleged that they have an obligation to

pay SeaWorld anything.  If Plaintiffs have paid any of the alleged "invoices" that they claim

SeaWorld has sent to them after BGW closed, they are doing so (1) pursuant to a contract either Plaintiff can cancel at any time; (2) with knowledge that BGW is not open or completely open; (3) with knowledge that their payments are not refundable; but (4) with knowledge that any amount paid to SeaWorld while BGW is closed will earn them extra access when BGW fully reopens. These facts undermine each of the eight causes of action in the FAC. As shown below, all claims should be dismissed. Since Plaintiffs already have had an opportunity to re-plead their case, the dismissal should be with prejudice.

*First*, Plaintiffs have failed to plead their fraud-based claims (**Counts 1-2, 7**) with the heightened specificity required by Fed R. Civ. P. 9(b). Plaintiffs allege that SeaWorld fraudulently misrepresented and omitted the terms of its annual passes in violation of the Virginia Consumer Protection Act ("VCPA") (**Count 1**), the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (**Count 2**), and common law (**Count 7**). But Plaintiffs **do not** allege the most critical element – the content of any false or misleading statement made by SeaWorld. Nor do Plaintiffs allege **when** or **where** SeaWorld made the phantom statement, or **why** it was false at the time. Nor do they allege the omitted facts SeaWorld should have disclosed, or that SeaWorld had a duty to disclose. Rule 9(b) demands this level of specificity, which the FAC does not provide.

Plaintiffs also claim that the invoices that SeaWorld sent to them after BGW closed either falsely implied that the park was open or failed to disclose that the park was closed. Even if this were true, Plaintiffs do not allege that they were in any way misled or paid any such invoice without knowing that BGW was closed.

*Second,* even if Plaintiffs had met their heightened pleading burden, the VCPA and FDUTPA claims fail as a matter of law. SeaWorld annual passes do not constitute "goods" or

"services" under the VCPA definition of the terms. Moreover, Plaintiffs – Virginia residents – lack Article III standing to bring claims under the FDUTPA because they allege no harm suffered under the laws of Florida.

*Third*, Plaintiffs' impossibility and frustration of purpose claims for declaratory relief (**Counts 3-4**) are misconceived. While SeaWorld does not dispute that alleged any breach of contract by SeaWorld was excused by these principles, Plaintiffs cannot parlay that into a refund claim because the relevant contract expressly allocated the risk of loss to Plaintiffs.

*Fourth*, Plaintiffs' claim for breach of contract (**Count 5**) fails as a matter of law. As of March 2020, both Plaintiffs had the right to cancel their installment contracts. Since neither did so, SeaWorld continued to collect non-refundable payments as Plaintiffs agreed that SeaWorld could do under the terms of the installment contracts. At a minimum, Plaintiffs have failed to meet Fed. R. Civ. P. 8(a)'s basic pleading requirements.

*Fifth*, Plaintiffs' claim for restitution based on quasi contract/unjust enrichment (**Count 6**) also fails to meet Rule 9(b)'s pleading standard and is barred by the existence of the binding installment contracts. The conversion claim (**Count 8**) fails because it alleges nothing more than breach of a contractual duty, which cannot form the basis for a conversion claim.

*Sixth*, Plaintiffs' requests for injunctive relief and punitive damages also fail. The VCPA only permits governmental parties to obtain injunctive relief, and Plaintiffs cannot obtain injunctive relief under the FDUTPA because they lack Article III standing. Moreover, Plaintiffs' punitive damage claim should be stricken for failure to allege any facts that would establish malicious or wanton conduct.

A court recently dismissed similar claims against SeaWorld under California law based on standing and Rules 8(a) and 9(b). *See Kouball v. SeaWorld Parks & Entertainment, Inc.*, 2020 WL 5408918 (S.D. Cal. Sept. 9, 2020). The same result should follow here.

## II.    ARGUMENT

### A.    Plaintiffs' VCPA, FDUTPA, and Common Law Fraud Claims (<u>Counts 1-2, 7</u>) Do Not Meet Rule 9(b) Pleading Requirements.

#### 1.    Rule 9(b)'s Heightened Pleading Standard Applies to Plaintiffs' Claims Sounding in Fraud and Requires Particularity.

Plaintiffs' VCPA, FDUTPA, and common law fraud claims (Counts 1-2, 7) (collectively, the "fraud claims") each sound in fraud and therefore are subject to the heightened pleading requirements of Rule 9(b). *See Cozzarelli v. Inspire Pharma. Inc.*, 549 F. 3d 618, 629-630 (4th Cir. 2008) (Rule 9(b) apples to all claims sounding in fraud); *see also Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1328 (S.D. Fla. 2020) (Rule 9(b) applies to FDUTPA claims); *Wynn's Extended Care, Inc. v. Bradley*, 619 Fed. Appx 216, 220 (4th Cir. 2015) (same as to VCPA claims). Each claim requires either a **fraudulent** or **deceptive** representation or act.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). To meet this standard, "a plaintiff must plead the <u>**time**</u>, <u>**place**</u>, and <u>**contents**</u> of the false representation, as well as the <u>**identity**</u> of the person making the misrepresentation and what he obtained thereby." *Edmonson v. Eagle Nat'l Bank*, 922 F. 3d 535, 553 (4th Cir. 2019) (internal quotation omitted). This is commonly regarded as the "<u>**who**</u>, <u>**what**</u>, <u>**when**</u>, <u>**where**</u>, and <u>**how**</u>" (or <u>**why**</u>) of the alleged misrepresentation. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (emphasis added). Fraud allegations based merely on "bare contentions" or "bald assertions" with no specifics of the "substance of the misrepresentations" fail to satisfy Rule 9(b). *Baker v. Elam*, 883 F. Supp. 2d 576, 580 (E.D. Va. 2012). Reliance also must be pleaded with specificity.

*See Xia Bi v. McAuliffe*, 927 F.3d 177, 185 (4th Cir. 2019) ("There is [no]…extra wiggle room in pleading the reliance elements of…state and federal fraud claims."). Omission-based fraud claims likewise must comply with Rule 9(b). Plaintiffs must "plead the types of facts omitted, [and] the place in which the omission should have appeared." *Morris v. Wachovia Securities, Inc.*, 277 F. Supp. 2d 622, 645 (E.D. Va. 2003).

As shown below, Plaintiffs' failure to comply with Rule 9(b) requires dismissal of all their fraud claims. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 n.5 (4th Cir. 1999) ("[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)."). *See also Kouball*, 2020 WL 5408918, at *3-5 (similar claims under California law dismissed for lack of Rule 9(b) specificity).

### 2. Plaintiffs Do Not Allege Facts Sufficient to State a Claim for Fraud or Violations of the VCPA and the FDUTPA.

When the Court focuses, as it must, *see Gentry*, 2017 WL 1289050 at *3, on the allegations specific to Plaintiffs, the claims are so vague and undeveloped that the alleged fraudulent misrepresentations or omissions are impossible to discern. At some points, the FAC alludes to affirmative misrepresentations by SeaWorld. FAC ¶¶ 13, 26, 72, 85. At others, Plaintiffs vaguely reference fraudulent omissions. *Id*. ¶¶ 26, 43, 127. Plaintiffs also claim that the monthly "invoices" contained "implied misrepresentations" of fact. *Id*. ¶¶ 12, 14, 42, 44. None of this complies with Rule 9(b).

#### a. *Plaintiffs Do Not Allege The Specific Statement At Issue for a Claim of Affirmative Misrepresentation.*

Plaintiffs seem to assert that SeaWorld made affirmative misrepresentations on which Plaintiffs relied. *Id*. ¶¶ 13, 26. But Plaintiffs do not plead the **what**, **when**, **where** and **how** of SeaWorld's alleged affirmative misrepresentations and rely instead on generalities and legal conclusions. *See, e.g.*, *id*. ¶¶ 13, 26, 72, 85. **Nowhere** in the FAC do Plaintiffs identify **what**

statement they actually read or heard, **when** they read or heard it, **where** it was published, or **how** it was a material misrepresentation of fact.  *No* affirmative statement is attributed to SeaWorld in the entire FAC, whether in purported advertising or an "invoice."  Instead, Plaintiffs' misrepresentation claims rest entirely on boilerplate assertions of "misrepresentations," *id.* ¶¶ 13, 26, and two legal conclusions alluding to "advertising." *Id*. ¶¶ 72, 85.

The glaring failure to describe any fraudulent statement by SeaWorld is reason alone to dismiss the fraud claims.  *See Applied Interact, LLC v. Continental Airlines, Inc.*, 2008 WL 177740, at *3-4 (E.D. Va. Jan. 17, 2008) (Rule 9(b) requires pleading the substance of a fraudulent misrepresentation).  Worse yet, Plaintiffs also fail to plead the **when**, **where**, and **why or how** of the alleged misrepresentations.  The Court and SeaWorld must guess when and where Plaintiffs saw or heard the phantom statement, and why or how it was false at the time made.

A pleading containing general, conclusory allegations of fraud like these "fails in its entirety." *Gentry v. Hyundai Motor America, Inc.*, 2017 WL 354251, *7 (W.D. Va. Jan. 23, 2017).  The *Gentry* plaintiff based his VCPA claim on allegations that Hyundai advertised that its cars could get between 38 to 40 miles per gallon, but the car plaintiff bought did not.  *Id*. at *1, 3 (detailing statements averred).  Plaintiff's VCPA claim lacked the necessary 9(b) specificity, even though plaintiff pleaded the general contents of the fuel mileage statements and when and where he saw them.  *Id*. at *7.  While it "create[s] a miasma of impropriety, the complaint here alleges very few details about what [plaintiff] actually encountered…; rather, the complaint contains broad, generic references to unspecified advertisements that [defendant] allegedly made and [plaintiff] was vaguely aware of at some undisclosed time." *Id*.

The FAC does not even create a "miasma of impropriety," let alone comply with Rule 9(b). It has *even less* detail than the *Gentry* complaint, which at least asserted some details of the alleged misrepresentations, the year in which plaintiff saw them, and generally where they were made. Here, Plaintiffs only fleetingly reference "misrepresentations" and "advertisements" with zero details. The FAC should therefore be dismissed. *See Maines v. Guillot*, 2016 WL 3556258, *3 (W.D. Va. Jun. 16, 2016) (dismissing as "plainly insufficient" a VCPA claim pleaded in a "vague and conclusory fashion").

>    b.    *Plaintiffs Do Not Sufficiently Allege Omission of a Material Fact.*

"When the fraud alleged is based on an omission of material fact, Rule 9(b) requires that plaintiffs plead the **type** of facts omitted, the **place** in which the omission should have appeared, and the **way** in which the omitted facts made the defendant's affirmative representations misleading." *Morris*, 277 F. Supp. 2d at 645 (emphasis added); *see also Zaklit v. Global Linguist Solutions, LLC*, 53 F. Supp.3d 835, 850 (E.D. Va. 2014); *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571 (E.D. Va. 2003) (applying Rule 9(b)'s particularity requirement to numerous claims of fraud by omission). The FAC not only fails to comply with Rule 9(b) as to omissions, it also alleges facts that ***directly contradict*** the claim that SeaWorld failed to disclose material facts.

Plaintiffs assert that SeaWorld "omitted material information regarding its monthly invoices" and "failed to disclose that it was unable to provide the services." FAC ¶¶ 26, 43, 127. This implies that SeaWorld either failed to disclose that passholders would not get refunds of monthly payments in the event of the parks' closure ***or*** failed to disclose that its parks were closed. *See, e.g., id*. ¶¶ 17, 19, 43. *First*, the installment contracts referred to in the FAC (the details of which Plaintiffs ignore) clearly state that payments are not refundable. *See* Exs. B & C hereto. Neither Plaintiff claims he/she did not know there will be no refunds. *Second*, the

insinuation that SeaWorld failed to disclose that its parks were closed is absurd. Plaintiffs allege that they were under a stay at home order **and** that SeaWorld notified the public that its parks were closed. FAC ¶¶ 36, 38. The FAC even contains a screenshot of SeaWorld's closure announcement. *Id*. ¶ 38. Neither Plaintiff claims to be unaware of the closure. Thus, the unambiguous language of the contracts **and** averments in the FAC refute any claim that SeaWorld failed to disclose the terms of the monthly payments or that its parks were closed.

Finally, Plaintiffs' omission-based claims do not satisfy Rule 9(b)'s pleading standard because they do not specify **what** facts SeaWorld omitted, **where** the omitted information should or could have been disclosed, or **how** the omissions made SeaWorld's other statements misleading. The lack of specificity and vague allusions to nondisclosure violate Rule 9(b) and, thus, Plaintiffs' fraud claims based on omission of material fact must be dismissed.

> c. *Plaintiffs Do Not Sufficiently Allege that SeaWorld had a Duty to Disclose.*

Under Rule 9(b), a claim of fraud by omission also requires the plaintiff to allege with reasonable particularity that the defendant had a **duty to disclose** a fact. *See S. USA Life Ins. Co., Inc. v. Foster*, 2019 WL 2110598, at * 5 (W.D. Va. Apr. 29, 2019). "A duty to disclose may arise where 'concealment of a material fact by one who knows the other party is acting upon the assumption that the fact does not exist[.]'" *Carlucci v. Han*, 907 F. Supp. 2d 709, 740 (E.D. Va. 2012) (quoting *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999)). Such a duty may also arise when "one party takes actions which divert the other party from making prudent investigations (*e.g.*, by making a partial disclosure)." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 829 (4th Cir. 1999). The duty typically stems from a legal obligation or a fiduciary duty. *See e.g. Van Deusen v. Snead*, 441 S.E.2d 207 (Va. 1994) (seller and agent failed

to disclose material defects in home); *Allen Realty v. Holbert*, 318 S.E.2d 592 (Va. 1984) (plaintiff's accountant failed to disclose offers of purchase of plaintiff's assets).

Plaintiffs' fraud by omission claims do not state how any duty SeaWorld had to disclose information could have arisen. Plaintiffs allege nothing that makes it remotely plausible that SeaWorld had a duty to disclose how it would address novel, future events that Plaintiffs themselves characterize as "not reasonably foreseeable." FAC ¶ 101. Plaintiffs rely on the blanket assertion that "Defendant has a duty to disclose that it was unable to provide the services it was invoiced for," *id*. ¶ 17, but this is insufficient.

Setting aside the fact that SeaWorld **did** disclose the park closure, *see id.*, ¶ 38, SeaWorld was not required at the time Plaintiffs executed their installment contracts to disclose how it would address every possible situation that could affect park access. A duty to disclose could only have arisen *had SeaWorld known* that Plaintiffs purchased passes believing installment payments could be refunded or believing the parks would remain open during a pandemic. *See Carlucci*, 907 F. Supp. 2d at 740 (disclosure duty arises where one party knows the other is relying on false factual assumption). Plaintiffs do not plead any belief they had about a global pandemic when they purchased their passes, much less that SeaWorld knew of such belief. And the contracts entered into expressly made all payments non-refundable. *See* Exs. B & C hereto.

Moreover, the FAC does not claim that SeaWorld was better positioned than Plaintiffs to anticipate COVID-19 or the shutdown orders. *See Costello v. Larsen*, 29 S.E. 2d 856 (Va. 1944) (When "dealing with defendant at arm's length, it was the duty of plaintiff to make inquiry in regard to the true state of affairs"); *Bank of Montreal*, 193 F.3d at 829. Plaintiffs admit that SeaWorld closed its parks "due [to] the COVID-19 pandemic that **unprecedently** [sic] affected the United States' and global economies." FAC ¶ 30. (emphasis added). Yet, Plaintiffs also

admit that it is "foreseeable that a disease could impact a theme park … and even force it to close," and that an amusement park could close for multiple "foreseeable reasons," including inclement weather, mechanical failure and others. *Id*. ¶¶ 16, 47. The FAC clearly shows that Plaintiffs understood when they bought their passes that many things could lead to park closure but that their installment contract payments were non-refundable. The FAC therefore fails to show, as a matter of law, that SeaWorld had any duty to disclose.

        d.        *Plaintiffs' Allegations of "Implied Misrepresentations" are Neither Actionable Affirmative Misrepresentations Nor Material Omissions of Fact.*

The FAC also alleges that SeaWorld's "invoices" contained actionable "implied misrepresentations." FAC ¶¶ 12, 14, 42, 44. SeaWorld has uncovered no Virginia common law fraud, VCPA, or FDUTPA case based on "implied misrepresentations." It is unclear whether Plaintiffs intend their "implied misrepresentation" claim to fall within the ambit of affirmative misrepresentations, material omissions, or some other theory of recovery. Regardless, the claim fails to comply with Rule 9(b) for the same reasons that Plaintiffs' affirmative misrepresentation and omissions claims fail. The "implied misrepresentation" claim also violates Rule 8 because it is simply not *plausible*. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The FAC claims that, "by continuing to invoice Plaintiffs," SeaWorld "implied that it could provide the services it was charging for…[and these] implied misrepresentations were material to Members' purchases." FAC ¶¶ 12, 14, 42, 44. Evidently, "[m]embers relied on Defendant's misrepresentations. As a result, they continued to be charged for services Defendant is unable to provide." *Id*. ¶ 15, 45. This seems to claim that the monthly "invoices" they have received since park closure in March 2020 implied that SeaWorld was open. *See, e.g., id.* ¶¶ 12, 14, 42, 44. As a result, Plaintiffs did not cancel their installment contracts (which

they had the absolute right to do), but instead accepted monthly charges based on the "implied representation" that the park was open. *See, e.g., id*. ¶¶ 15, 45. This is utterly meritless.

First, the FAC pleads zero facts as to what any such "invoice" said, much less any language that implies that the park was open. The FAC is silent on when and how the Plaintiffs received the invoices, what was in them, what should have been in them, and how or why the invoices allegedly resulted in Plaintiffs allegedly "continuing to pay" for their annual passes. There are simply no details from which to conclude that the "invoices" implied *anything* contrary to what actually transpired. This does not comply with Rule 9(b).

Second, it is not plausible that Plaintiffs believed that SeaWorld parks were open simply because SeaWorld allegedly sent them "invoices." In the first place, neither Plaintiff pleads that she/he actually was unaware that the park was closed or actually believed that it was open when the "invoices" arrived. The FAC itself shows Plaintiffs knew the park was shut. *Id*. ¶ 36 (all citizens of Virginia, including Plaintiffs, were under stay-at-home order), ¶ 38 (screenshot of SeaWorld's closure notice with hyperlink to a website announcing automatic extension of annual passes, Ex. A hereto). Plaintiffs' claim that their receipt of alleged "invoices" from SeaWorld was an "implied misrepresentation" that SeaWorld parks were open and operating during the national "state of emergency due to the COVID-19 pandemic," *id*. ¶ 37, is not plausible or compliant with Rule 9(b) and should be dismissed.

e. <u>Plaintiffs Do Not Allege Justified, Reasonable Reliance, Which is Necessary for the Virginia Fraud Claims</u>

A VCPA or Virginia common law fraud claim requires that plaintiff plead actual reliance on a false statement or nondisclosure. *See State Farm Mut. Ins. Co.*, 816 S.E.2d 316 (Va. 2005) (reliance an element of common law fraud); *Galloway v. Priority Imports Richmond, LLC*, 426 F. Supp. 3d 236, 246, 426 F. Supp. at 246 (VCPA claim requires fraudulent misrepresentation,

13

which, in turn, requires reliance).[4]  The reliance must have been justified **and reasonable**.  *See*

*Elliot v. Great Point Partners, LLC*, 2011 WL 63657, at *4 (E.D. Va. Jan. 5, 2011) (Virginia

common law fraud claim); *Adardour v. American Settlements, Inc.*, 2009 WL 1971458 (E.D. Va.

July 2, 2009) (VCPA claim).  For example, it is not reasonable for a party to rely on statements

that contradict language in a contract.  *See Foremost Guaranty Corp. v. Meritor Sav. Bank*, 910

F.2d 118, 126 (4th Cir. 1990); *Andardour*, 2009 WL 1971458, at *3-4.  "Reasonable reliance

poses a higher standard" than justified reliance alone. *PNC Bank, N.A. v. Dominion Energy*

*Mgmt.*, 2018 WL 1768061, at *11 (E.D. Va. April 11, 2018).  A plaintiff's failure to plead

**reasonable** reliance is "fatal" to its claims. *Ostolaza-Diaz v. Countrywide Bank, N.A.*, 360 F.

Appx 504, 506 (4th Cir. 2010).

　　　The FAC alleges no facts demonstrating that Plaintiffs relied on a misrepresentation by

SeaWorld, let alone that the reliance was both justified and reasonable.  The FAC simply

concludes that "[m]embers relied on Defendant's misrepresentations" and that Plaintiffs

"reasonably relied on the implied misrepresentations alleged herein when purchasing [their]

month-to-month membership and when continuing to pay [them]."  FAC ¶¶ 15, 23, 24.  These

boilerplate assertions parroting the bare elements of the claim do not suffice.  The FAC contains

no facts as to why the alleged misrepresentations or implied misrepresentations (which

themselves are not described) were reasonably relied upon.  Plaintiffs plead nothing that shows

that it was reasonable to conclude that they could access SeaWorld's parks despite the global

---

[4] Reliance is not required to state a claim under the FDUTPA, but is required for a Florida
common law fraud claim.  *See Davis v. Powertel, Inc.*, 776 So.2d 971, 973 (Fla. Dist. Ct. App.
2000) (reliance is not an element of a FDUTPA claim); *Lance v. Wade*, 457 So.2d 1008, 1011
(Fla. 1984) (finding that reliance on misrepresentation is an element of fraud).

pandemic, national state of emergency, state-wide stay at home order, and SeaWorld's public closure announcement or that their payments were refundable.

B.     **Plaintiffs' VCPA Claim (<u>Count 1</u>) Must be Dismissed as a Matter of Law Because SeaWorld Passes are Not "Goods" or "Services" under the Act.**

The VCPA applies to **<u>consumer transactions</u>**.  *See Salehi v. Wells. Fargo Bank, N.A.*, 2012 WL 2119333, at *5 (E.D. Va. Jan. 11, 2012) (complaint dismissed for failure to allege a false statement in a consumer transaction).  A consumer transaction includes the "advertisement, sale, lease, license or offering for sale, lease, or license of **<u>goods or services</u>** used primarily for personal, family, or household purposes[.]"  Va. Code Ann. § 59.1-198.   If a transaction does not involve goods or services, as the Act defines those terms, then the VCPA does not apply.

The VCPA would apply here only if SeaWorld annual passes are "goods or services."  "'**<u>Goods</u>**' means all **<u>real, personal or mixed property, tangible or intangible</u>**."  Va. Code Ann. § 59.1-198 (emphasis added).  SeaWorld annual passes are not real, personal, or mixed property under Virginia law.  According to the FAC, annual passes "entitle members to use the Parks," *i.e.*, they are limited **<u>licenses for admission</u>** (not real or personal property) to SeaWorld's private property.  FAC ¶ 7.

Under Virginia law, an entrance or admission ticket is a **<u>license</u>**.  *See W.W.V. Co. v. Black*, 113 Va. 728, 730 (1912).  A license, in turn, is merely permission to enter the real property of another, but without a right of continuing use.  *See Station # 2, LLC v. Lynth*, 695 S.E.2d 537, 542-43 (Va. 2010).  Critically, a license is the grant of a right or privilege – it does not convey a possessory interest in the real property at issue.  *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*, 65 F. 3d 1113, 1120-21 (4th Cir. 1995) (under Virginia law, a license is a privilege to act on another's land, without a possessory interest in the land); *Bunn v. Offutt*, 222 S.E.2d 522, 525 (Va. 1976) (defining a license as "a right"); *see also Mgtm.*

*Enterprises, Inc. v. Thorncroft Co., Inc.*, 416 S.E.2d 229, 213 n. 1 (Va. 1992) (the right to hunt and fish on another's land was a license).

As applied here, SeaWorld passes give holders a license to enter SeaWorld parks. The passes are simply a tangible representation that the holders have purchased a license to enter SeaWorld's property. The license itself is not real or tangible property, as it merely bestows on visitors a privilege to enter the park, visit exhibits, and attend shows as guests of SeaWorld. Moreover, the license does not give holders any sort of possessory interest in SeaWorld's real property. Because SeaWorld passes are not "real, personal or mixed property," but rather licenses, they do not meet the VCPA's definition of "goods."

The passes also are not "services" under the plain language of Act. "'Services' includes but shall not be limited to (i) work performed in the business or occupation of the supplier, (ii) work performed for the supplier by an agent whose charges or costs for such work are transferred by the supplier to the consumer or purchaser as an element of the consumer transaction, or (iii) the subject of an 'access contract' as defined in § 59.1-501.2." Va. Code Ann. § 59.1-198. Section 59.1-501.2, in turn, defines an access contract as "a contract to obtain, by electronic means, access to, or information from, an information processing system of another person, or the equivalent of such access." More simply, access contracts pertain to the right of access to information processing systems like computers. A pass to SeaWorld is not "work performed" or an "access contract" and, thus, is not a "service" under the VCPA. *Cf. Kouball*, 2020 WL 5408918, at *5 (SeaWorld annual passes not "services").

**C.     Plaintiffs' FDUTPA Claim (Count 2) Must be Dismissed Because Plaintiffs Lack Standing to Bring Out of State Claims.**

Under Article III, Plaintiffs must establish standing for each claim, which requires injury in fact, causation, and redressability. *See Friends of Earth, Inc. v. Laidlaw Entl. Servs.*, 528 U.S.

167, 191-92 (2000); *Lujan v. Defs. of* Wildlife, 504 U.S. 555 (1992).  Courts properly address

Article III standing prior to class certification.  *See In re Interior Molded Doors Antitrust Lit.*,

2019 WL 4478734, at * 12 (E.D. Va. Sept. 18, 2019).  Plaintiffs lack Article III standing for their

FDUTPA claim because they have pleaded no cognizable injury in fact.

Class action claims brought under the laws of states where no named plaintiff resides or

has suffered harm, have no Article III standing and should be dismissed *with prejudice*.  In *In re*

*Interior*, the named plaintiffs asserted claims against defendants under the laws of thirty-nine

states. *Id*. at *11.  However, the named class representatives were residents of only four of the

thirty-nine states.  *Id*.  The Court held that "at least one named class representative [must] have

Article III standing to raise each class of subclaim." *Id*., citing *Wooden v. Bd. of Regents*, 247

F.3d 1262, 1288 (11th Cir. 2001). That is, at least one named plaintiff must have standing under

the *specific* laws stated in the complaint.  *Id*.  (internal quotation omitted). Therefore, the Court

dismissed all claims brought under the laws of states where the class representative did not reside

or suffer injury.  *Id*. at *13.

Here, Plaintiffs are Virginia residents seeking to bring class claims under Florida law

with no pleaded connection to that state.  FAC ¶¶ 22-24.  The FAC alleges that SeaWorld "made

the challenged false representations to Plaintiffs **in this District**," and their alleged injury stems

from being "deprived use of their [SeaWorld] memberships **within this District**."  *Id.* ¶ 28.  The

FAC nowhere alleges that either Plaintiff suffered an injury in Florida, or purchased passes to

BGT.  The Plaintiffs' contracts are limited to the purchase of passes for SeaWorld's Virginia

parks.  Exs. C-D hereto.  With no pleaded Florida-based injury, Plaintiffs lack standing to bring the FDUTPA and their other Florida law claims. [5]

### D.    Plaintiffs' Claims for Declaratory Relief (<u>Counts 3-4</u>) Should Be Dismissed.

Counts 3 and 4 of the FAC seek a declaration that the national and state stay at home orders made it impossible for Defendant to perform, or frustrated the purpose of, the contract. FAC ¶¶ 102, 103.  These claims fail for multiple reasons.

First, Plaintiffs' claims are internally inconsistent.  As to their fraud and omission claims, Plaintiffs allege that the closure of the park due to COVID-19 was foreseeable.  *Id*. ¶¶ 16, 46, 47. Yet, for purposes of impossibility, Plaintiffs claim that the closure was unforeseeable.  *Id*. ¶ 101. The same fact – park closure due to shutdown orders – cannot be foreseeable *and* unforeseeable at the same time.  It also is odd, to say the least, that Plaintiffs would sue Defendant for breach of contract (Count 5) and then seek a declaration that the same alleged breach is excused by the doctrines of impossibility and frustration of purpose (Counts 3-4).

Second, an action for declaratory relief must present a "'case or controversy' within the confines of Article III."  *White v. Nat'l Union Fire Ins. Co.*, 913 F.2d 165, 167 (4th Cir. 1990). The only way Plaintiffs' declaratory judgment claims raise a live controversy for this Court is if a finding of either impossibility or frustration of purposes would excuse Plaintiffs' obligations under the installment contracts, or entitle them to a refund.  Plaintiffs can make no such claim under either doctrine.

Impossibility of performance and frustration of purpose are "legally distinct defenses, [but] they are related, and the elements are similar."  *CMA CGM S.A. v. Leader Int'l Express Corp.*, 2020 WL 4249705, at*7 (E.D. Va. July 23, 2020); *see also Vienna Metro LLC v. Pulte*

---

[5] Plaintiffs lack standing to bring *any* Florida claims for the reasons set forth in this section, including common law fraud, unjust enrichment, or conversion.

*Home Corp.*, 786 F. Supp. 2d 1076, 1084 (E.D. Va. 2011). Impossibility excuses a promisor's failure to perform when it is due to "'domestic law, … [the] change in the character of something to which the contract related, or [was] a necessary means of performance[.]'" *Hampton Roads Bankshares, Inc. v. Harvard*, 781 S.E.2d 172, 178 (Va. 2016) (internal quotation omitted). A "governmental regulation or order" can also render a party's performance impossible. *See* Restatement (2d) of Contracts (1981) ("Restatement") § 264. When a party's performance is rendered impossible, "his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary." *Id.* § 261; *see RECP IV WG Land Investors LLC v. Capitol One Bank*, 811 S.E.2d 817, 826 (Va. 2018) (applying Restatement § 261).

Similarly, frustration of purpose "discharge[s] a party from its outstanding contractual obligation due to a supervening frustration." *CMA*, 2020 WL 4249705, at*5. "The doctrine is narrow and applies to instances 'where a wholly unforeseeable event renders the contract valueless to one party.'" *Id.* (quoting *Caper Corp. v. Wells Fargo Bank, N.A.*, 578 F. App'x 276, 288 (4th Cir. 2014)). When "a party's principal purpose is substantially frustrated … his remaining duties to render performance are discharged, unless the language or the circumstances indicate to the contrary." Restatement § 265; *see also Opera Co. of Boston, Inc. v. Wolf Trap Fnd'n*, 817 F.2d 1094, 1102 (4th Cir. 1987) (applying Restatement § 265).

Neither doctrine assists Plaintiffs. Even if the circumstances pleaded amounted to impossibility or frustration of purpose, those concepts "would discharge only the 'remaining duties'" of Plaintiffs. *Coker Int'l, Inc. v. Burlington Ind., Inc.*, 747 F. Supp. 2d 1168, 1171 (D.S.C. 1990) (quoting Restatement § 261), *aff'd mem.*, 935 F.2d 267 (4th Cir. 1991); *see also* Restatement § 265 (frustration discharges "remaining duties"). The FAC does not allege that

Plaintiffs are under any obligation to pay SeaWorld anything.  Also, even though Plaintiffs claim breach of contract, neither impossibility nor frustration of purpose applies to "a claim for breach that has already arisen."  *See* RESTATEMENT § 261, cmt. a.

To the extent that Plaintiffs claim that obligations to pay arose by virtue of the alleged monthly "invoices" that Plaintiffs claim SeaWorld sent to them after the park closed, *see* FAC ¶¶ 12, 20, 42, 63, 71, 133, 136, impossibility and frustration of purpose do not apply to that either.  Circumstances existing at the time that a contract is made will only excuse a party's performance on impossibility or frustration grounds if they are facts that the party "has no reason to know." RESTATEMENT § 266; *id*., cmt.a ("affected party must have had no reason to know at the time the contract was made of the facts on which he later relies" in claiming impossibility or frustration of purpose).  Neither Plaintiff alleges that, at the time they either received the alleged invoices or allegedly paid them, they had no reason to know, or were actually unaware, of the shutdown orders or that the park was closed.

Furthermore, a party to the affected contract will not be discharged of its contractual obligations if the contract allocates the risk of loss to that party or provides otherwise.  *Hampton Roads*, 781 S.E.2d at 178 (discharge of obligation unless party "'expressly agreed in the contract to assume the risk of performance'") (citation omitted); RESTATEMENT § 261 ("unless the language [of the contract] … indicate[s] the contrary"); *id*. § 265 (same); *id*. § 266 (same).  This principle applies to *both parties* to a contract.  *Id*. § 267 (no discharge of other party if "the other party assumed the risk that he would have to perform despite [promisor's] failure" to perform).

Here, the installment contracts clearly allocate to Plaintiffs the risk that, if they make monthly payments, they will not get their money back whether the park is open or not.  In both contracts, the parties expressly agreed, without qualification, that any amounts paid to SeaWorld

will not be refunded.  *See* Exs. B & C.  Thus, even though the shutdown orders excuse SeaWorld's contractual performance, they do not excuse Plaintiffs and, in particular, give Plaintiffs no refund claim.

*Jewell v. Sports USA, Inc*., 19 Va. Cir. 19 (1989), illustrates this principle.  There, plaintiff paid in advance for martial arts lessons for his son.  However, after the contract was formed and the money paid, the son contracted scoliosis and was unable to take the lessons, so plaintiff sued for a refund.  The court agreed that "the continued physical ability of Plaintiffs' son to attend these lessons would appear to be a basic assumption upon which both parties relied in making the contract," but the contract "contained a no refund policy."  *Id* at *2.  The court therefore dismissed the case because the contract's no-refund language showed that "Plaintiff expressly and unconditionally agreed to assume the risk of performance."  *Id*.

Similarly, in *Coker*, involving a contract to buy used looms for resale in Peru, plaintiff sought to set aside the contract and recover a down payment, arguing that the contract's purpose was frustrated when the government of Peru canceled all import licenses.  747 F. Supp. 2d 1168.  Because the contract expressly made the down payment "non-refundable," the court ruled that even if the Peruvian government's actions frustrated the purpose of the contract, the buyer was not excused and could not get a refund.  *Id.* at 1171-72.  The express "non-refundable" language allocated the risk to plaintiff that it would make the down payment but might not be able to resell the looms.  *Id*. at 1171; *see also CMA*, 2020 WL 4249705, at*5-7 (contract allocated risk of delay to shipper, precluding application of impossibility or frustration of purpose).  The same result should follow here: "no refunds" means no refunds.  Virginia follows the "plain meaning" rule as to contract language.  *Vienna Metro*, 786 F. Supp. 2d at 1083 (citing *Berry v. Klinger*, 300 S.E.2d 792 (Va. 1983)).

Finally, Plaintiffs' circumstances simply do not fit impossibility or frustration of purpose. A party whose performance is frustrated or rendered impossible (SeaWorld) is discharged. Absent contract language to the contrary, the other party (Plaintiffs) is also usually discharged, not because he cannot perform,[6] but because he is not required to "give something for nothing." CORBIN ON CONTRACTS § 1343 at 1124 (1952); *see also CMA*, 2020 WL 4249705, at*5 (frustration renders contract "valueless" to one party).  Based on their own pleaded facts, to the extent Plaintiffs actually are receiving and paying the monthly "invoices" that SeaWorld allegedly is sending to them, they are not paying "something for nothing."  Nor is the contract "valueless" to them.  As the contracts referenced in the FAC make clear, Plaintiffs' annual pass contracts continue month-to-month *only if* Plaintiffs elect not to cancel them, which they can do at any time and have had the opportunity to do at all times after the park closed on March 16, 2020.  Exs. B & C hereto.  The FAC does not allege otherwise.  In addition, any payments that Plaintiffs allegedly have made were made, not only with knowledge that the park is closed (or not fully reopened), but also with knowledge that SeaWorld will add any park access time actually paid for during the closure to the annual pass to be used free of charge when the park fully reopens.  *See* Ex. A hereto.  The FAC does not allege otherwise on these points either. Consequently, the Court should dismiss Counts 3 and 4 of the FAC.

---

[6] Plaintiffs do not allege that they cannot perform the contract.  Neither alleges that it is "impossible" to pay the small monthly charge ($20 for Gurwell; $15 for Sylvia) that Plaintiffs claim SeaWorld is charging them.  FAC ¶¶ 22-23.  Nor does either Plaintiff plead that the contract's purpose was "frustrated" as to them.  Neither claims that, even though the COVID-19 pandemic is still underway with mask, social distancing and other requirements, they would actually go to the park even if it were fully reopened.

**E. Plaintiffs' Claim for Breach of Contract (<u>Count 5</u>) Must Be Dismissed As a Matter of Law Because SeaWorld Had a Contractual Right to Collect Payments.**

The plain language of the installment contracts permits SeaWorld to collect monthly payments from Plaintiffs unless and until they provide notice of cancellation. Exs. B & C hereto. Since neither Plaintiff has pleaded cancellation of their installment contracts, SeaWorld is not in breach for continuing to collect monthly payments under the terms of the agreements. When, as is the case here, the "contract terms are clear and unambiguous, a court must accord those terms their plain meaning." *Quadros & Assoc., P.C. v. City of Hampton*, 597 S.E.2d 90, 93 (Va. 2004); *see also Kraft Foods N. Am., Inc. v. Banner Eng'g & Sales, Inc.*, 446 F. Supp. 2d 551, 577 (E.D. Va. 2006) (Virginia law requires strict adherence to the "'plain meaning' rule of interpreting contract, whereby clear and explicit language in a contract is to be taken in its ordinary significance.").

Plaintiffs vaguely allege that SeaWorld breached their contract by "accept[ing] their money even though the parks were closed" and preventing Plaintiffs from entering the parks "whenever [they] wanted." FAC ¶¶ 10-11, 55. Notably, Plaintiffs seem to adopt the installment contracts attached to SeaWorld's motion to dismiss the initial complaint (and attached hereto as Exs. B & C), but fail to attach copies of the same to the FAC. *Id*. ¶ 63.

The terms of the installment contracts are clear and unambiguous. First, Plaintiffs' credit cards would be billed for each month during the initial term – 24 months for Plaintiff Gurwell and 12 months for Plaintiff Sylvia. Exs. B & C hereto. Then, the installment contracts automatically become month-to-month once the initial term elapses, at which point the Plaintiffs have a right to cancel ***at any time***. *Id*. Absent cancellation by the purchaser, the installment contracts permit SeaWorld to continue collecting payment. *Id*. The installment contracts do ***not***

say that Plaintiffs have the right to enter the parks "whenever they want" so long as monthly membership dues are paid.  FAC ¶ 55.

As a matter of law, SeaWorld has acted in accordance with the terms of the installment contracts and its rights thereunder.  Plaintiffs could have – but have not – cancelled the installment contracts.  Because they have not cancelled, SeaWorld has a contractual right to continue collecting monthly payments, and the breach of contract claim must be dismissed.  *See e.g., Breton, LLC v. Lincoln Nat. Life Ins. Co.*, 805 F. Supp. 2d 251, 267 (E.D. Va. 2011) ("[Plaintiff] has spilled a great deal of ink in an effort to convince the Court that [Defendant] is not entitled to collect those fees.  The plain language of the [document], however, states otherwise – and it is the ink that controls.").

At a minimum, the breach of contract claim should be dismissed because it fails to meet Rule 8(a)'s basic pleading requirements.  Conclusory allegations, speculation, and legal conclusions will not suffice.  *See Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  For a breach claim, a plaintiff must plead facts to support "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Ramos v. Wells Fargo Bank, NA*, 770 S.E. 2d 491, 493 (Va. 2015).

As to the first element, Plaintiffs rely on a vague statement that they entered into contracts with SeaWorld that allowed them "whenever they want" to "access to park facilities in exchange for the payment of monthly membership fees." FAC ¶¶ 55, 113.  But Plaintiffs do not identify a single contractual provision entitling them to enter the parks during a global pandemic or otherwise "whenever they want." The only contracts referenced in the FAC – the installment contracts, Exs. B & C hereto – contain no such provision.  Absent pleaded facts that the park

access that Plaintiffs claim was agreed to, Plaintiffs have failed to plead even the existence of a contractual obligation. *See Tessler v. NBC Universal, Inc*, 2009 WL 866834 (E.D. Va. Mar. 31, 2009) ("The complaint must set forth the provisions of the contract and the terms of the agreement upon which liability is predicated, either by express reference or by attaching a copy of the contract."); s*ee also Kouball*, 2020 WL 5408918, at *6 (dismissing breach of contract claim based on "vague and conclusory" allegations of the contract terms).[7]

Similarly, Plaintiffs have failed to plead a material breach. According to Plaintiffs, SeaWorld breached the contracts by refusing them access to the parks while continuing to collect payment. FAC ¶ 116. Here again, Plaintiffs offer only a blanket conclusion that a breach occurred without identifying any specific provision that SeaWorld breached. *See Mayo v. Wells Fargo Bank, N.A.*, 30 F. Supp. 3d 485, 492-93 (E.D. Va. 2014) (breach of contract claims dismissed because basis of claims not adequately specified). Indeed, the installment contracts establish *as a matter of law* that SeaWorld did not breach by continuing to collect payment.

### F. Plaintiffs' Unjust Enrichment Claim (<u>Count 6</u>) Is Incompatible with Their Contract Claim.

Plaintiffs cannot bring an unjust enrichment claim because, as pled in the FAC, the parties' relationship was subject to an express contract. "Where a contract governs the relationship of the parties, the equitable remedy of restitution grounded in quasi-contract or unjust enrichment does not lie." *WRH Mortg. , Inc. v. S.A.S. Associates*, 214 F.3d 528, 534 (4th Cir. 2000). Plaintiffs' unjust enrichment claim is incompatible with their breach of contract

---

[7] As to Plaintiffs' claim that SeaWorld has more recently breached the installment contracts by requesting an additional fee for admittances to "special events" held during its partial reopening, FAC ¶¶ 10, 54, the allegation again lacks the necessary detail to satisfy Rule 8(a). Plaintiffs do not state any contractual term that would grant them admission to "special events" without additional payment. Plaintiffs likewise do not allege that either of them has had to pay any such extra charges.

claim and must be dismissed. *See U.S. ex rel. Badr v. Triple Canopy, Inc.*, 950 F. Supp. 2d 888 (E.D. Va. 2013), (finding unjust enrichment claim precluded by contract), *rev'd in part on other grounds*, 957 F.3d 174 (4th Cir. 2017).

Even if allowed to plead in the alternative, Plaintiffs' claim for unjust enrichment fails on independent grounds. Plaintiffs fail to allege the claim with heightened specificity or state a claim on which relief can be granted. Plaintiffs allege that SeaWorld's "wrongful and deceptive conduct" resulted in SeaWorld unjustly receiving and retaining membership payments during the closure of its parks. FAC ¶¶ 120, 122. Since the claim sounds in fraud, it is subject to the same heightened pleading standard as Plaintiffs' statutory and common law fraud claims. *See Bakery & Conf. Union Indus. Int'l Pension Fund v. Just Born, Inc.*, 888 F.3d 696, 704 (4th Cir. 2018) (any claim sounding in fraud, including unjust enrichment, must be pled in accordance with Rule 9(b)). As presented in Section II(A), Plaintiffs have not pled their underlying allegations of fraud with sufficient specificity. These same deficiencies carry through to Plaintiffs' unjust enrichment claim, and without sufficient factual support, it must be dismissed. *See Levinson v. Mass. Mut. Life Ins. Co.*, 2006 WL 3337419, at *10 (E.D. Va. Nov. 9, 2006) ("Where Plaintiffs' [fraud claims] fail for lack of Rule 9(b) particularity, so too must any equitable remedies relying on such claims.").

Moreover, Plaintiffs have failed to plead how or why SeaWorld's retention of membership fees was "unjust," as is required to state a claim for unjust enrichment under Virginia law. *See Nossen v. Hoy*, 750 F. Supp. 740, 744 (E.D. Va. 1990) (retention of benefit is an element of unjust enrichment under Virginia law). Plaintiffs simply rely on conclusory statements that SeaWorld engaged in "wrongful and deceptive conduct" and was "unjust." FAC

¶¶ 120, 122.  They plead no facts to support the assertion that SeaWorld's retention of

membership fees is unjust.[8]

### G.  Plaintiffs' Claim for Conversion (<u>Count 8</u>) is Based on an Alleged Breach of a Contractual – Not Common Law – Duty.

Similarly, Plaintiffs' claim for conversion must be dismissed because, as pleaded, the

alleged conversion arises from SeaWorld's breach of a contractual duty.  Under Virginia law,

conversion is "any wrongful exercise or assumption of authority…over another's goods,

depriving him of their possession; [and any] act of dominion wrongly exerted over property in

denial of the owner's right, or inconsistent with it." *United Leasing Corp. v. Thrift Ins. Corp.*,

440 S.E. 2d 902, 905 (Va. 1994) (internal quotation omitted).  Liability for common law

conversion requires the breach of a common law duty. *See Condo. Serv., Inc. v. First Owners'*

*Ass'n of Forty Six Hundred Condo, Inc.*, 709 S.E. 2d. 163, 171 (Va. 2011).

When a claim for conversion is "nothing more than allegations of a negligent

performance of contractual duties," then the claim is only actionable under the contract, and not

in tort. *See Out of Chaos, Ltd. v. AON Corp.*, 15 F. Appx. 137, 142-43 (4th Cir. 2001); *see also*

*Size, Inc. v. Network Solutions, Inc.*, 255 F. Supp. 2d 568, 574 (E.D. Va. 2003) (dismissing

conversion claim based on defendant's alleged breach of a contractual duty).  Accordingly, a

"plaintiff cannot maintain a claim for conversion if the act of dominion exerted by the defendant

was wrongful only because it breached a defendant's duty under the contract." *Adair v. EQT*

*Prod. Co.*, 320 F.R.D. 379, 419 (W.D. Va. 2017) (internal quotation omitted).[9]

---

[8] While the FAC does not specifically plead a Florida unjust enrichment claim, it too would fail. *See Space Coast Credit Union v. Merrill Lynch, et al.*, 295 F.R.D. 540 (S.D. Fla. 2013) (Rule 9(b) pleading standard applies to Florida unjust enrichment claims).  In addition, unjust enrichment claims are not susceptible to class treatment in Florida. *See Green v. McNeil Nutritionals, LLC*, 2005 WL 3388158 (Fla. 4th Jud. Cir. Nov. 16, 2005)

[9] Florida law on conversion is similar.  *See Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp. 2d 1311, 1326 (M.D. Fla. 2013) ("[T]o establish a conversion when there is a contractual

Plaintiffs' allegation of conversion is rooted squarely in their overarching allegation that SeaWorld breached a contract by continuing to invoice Plaintiffs and the Class while the parks were closed. FAC ¶ 133. This transaction, as pleaded in the FAC, stemmed from a contract between SeaWorld and Plaintiffs. The FAC alleges no other duty that SeaWorld supposedly had. Because the conversion claim concerns a breach of a contractual – not common law – duty, it must be dismissed. *See Adair*, 320 F.R.D. at 419.

Plaintiffs' conversion claim also fails because the FAC does not allege that SeaWorld deprived Plaintiffs of anything, but simply that SeaWorld issued invoices. FAC ¶ ¶ 132-138.

**H.    Plaintiffs' Requests for Injunctive Relief and Punitive Damages Must Be Dismissed.**

**1.    Injunctive Relief is Not Available under the VCPA.**

Plaintiffs seek injunctive relief as a remedy for their VCPA claim, *id*. ¶ 80, but the Act's "unambiguous language" provides that only government officials may seek injunctive relief to enforce certain statutory provisions. *See Physicians Committee for Responsible Medicine v. General Mills, Inc.*, 2006 WL 3487651, *3 (E.D. Va. 2006) (granting Rule 12(b)(6) motion to dismiss claim for injunctive relief under the VCPA); *see also* Va. St. Ann. §§ 59.1-200, 59.1-203. Private individuals, like Plaintiffs, are only entitled to actual damages if there are any. *See* Va. St. Ann. § 59.1-204(A). Thus, Plaintiffs' request for injunctive relief under the VCPA should be dismissed.

**2.    Plaintiffs Do Not Have Article III Standing to Seek Injunctive Relief under the FDUTPA.**

Plaintiffs must not only establish standing for each claim, *see* Section II(C), but also for their request for injunctive relief under the FDUTPA. *See City of Los Angeles v. Lyons*, 461 U.S.

_____

relationship, the conversion must go beyond, and be independent from, a failure to comply with the terms of a contract.")

95, 111 (1983); *Friends of Earth*, 528 U.S. 167 at 191-92. To establish standing for injunctive relief, a plaintiff must show a real and immediate threat of future irreparable injury. *Lyons*, 461 U.S. at 111; *see also Griffin v. Dep.'t of Labor Federal Credit Union*, 912 F.3d 649, 656 (4th Cir. 2019). "The requirements of Article III standing do not change merely because a plaintiff is asserting claims under a state consumer protection statute" like the FDUTPA. *Marty v. Anheuser-Bush Companies, LLC*, 43 F. Supp. 1333, 1358 (S.D. Fla. 2014). A plaintiff cannot establish standing for injunctive relief under the FDUTPA by alleging past injury based on past exposure to allegedly false representations or fraudulent omissions made to consumers. *Id*. at 1352, 1354, 1359. Rather, a plaintiff must allege real and immediate future injury from the misrepresentations. *Id*. at 1359.

Here, Plaintiffs seek injunctive relief under the FDUTPA to stop SeaWorld's monthly collection of fees under the installment contracts, the alleged injury. FAC ¶ 93. Plaintiffs cannot reconcile this claim for injunctive relief under the FDUTPA with the fact that they have an absolute right to cancel the installment contracts. Plaintiffs have decided not to cancel their contacts, knowing that payments are non-refundable and that the parks are closed, evidently to keep their annual passes active. Importantly, any future payments (Plaintiffs' alleged injury) will be based on Plaintiffs' decision to remain in the installment contracts with SeaWorld. That decision is solely Plaintiffs' decision and does not stem from any purported harm inflicted by SeaWorld. As such, Plaintiffs fail to adequately plead future injury and lack standing for injunctive relief for deceptive trade practices. *See Marty*, 43 F. Supp. at 1351-1359 (no Article III standing for FDUTPA claim); *see also Kouball*, 2020 WL 5408918, at *6 (similarly pleaded injunctive relief claim dismissed for lack of standing).

### 3. Plaintiffs Fail to Allege Facts to Support a Claim for Punitive Damages.

A Virginia law punitive damage claim requires that the complaint allege facts to show that SeaWorld "acted with malice, defined as ill will, malevolence, grudge, spite, wicked intention, or a conscious disregard for the rights of another."[10]  *See Arnlund v. Deloitte & Touche LLP*, 199 F.Supp. 2d 461 (E.D. Va. 2002).[11]  Absent allegations of wantonness or malice, a claim for punitive damages must be dismissed.  While the FAC throws in more adjectives than were used in the Complaint, it does not allege any facts showing that SeaWorld acted with any level of ill will or malice toward the Plaintiffs.  If anything, the FAC simply shows that SeaWorld has adhered to the installment contracts and has given Plaintiffs additional benefits as a result of the park closure.  None of this is the stuff of punitive damages.

## III.  CONCLUSION

For the reasons stated herein and pursuant to Fed. R. Civ. P. 12(b)(6), the Court should dismiss the First Amended Complaint with prejudice.

October 1, 2020                                    Respectfully Submitted,


                                                   */s/ Christopher J. Tyson*

---

[10] As a matter of law, punitive damages are not available for violations of the VCPA, FDUTPA, breach of contract, or unjust enrichment claims.  *See* Va. Code. Ann. § 59.1-204(A) (limiting plaintiffs to treble damages for "willful" violations); *Rollins, Inc. v. Heller*, 454 So.2d 580 (Fla. 3d DCA 1984) (finding award of punitive damages in violation of FDUTPA); *Lewis v. Guthartz*, 428 So.2d 222, 223 (Fla. 1982) ("It is now a well-settled rule in Florida that punitive damages are not recoverable for breach of contract"); *T. Musgrove Const. Co., Inc. v. Young*, 840 S.E.2d 337, 341 (Va. 2020) (recovery for Virginia unjust enrichment claim is limited to the benefit realized and retained by the defendant); *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 806 (11th Cir. 1999) (same for Florida unjust enrichment).

[11] "Punitive damages are available under Florida law only upon a showing that the act complained of is characterized by 'willfulness, wantonness, maliciousness, gross negligence or recklessness, oppression, outrageous conduct, deliberate violence, moral turpitude, insult or fraud.'"  *Burger King Corp. v. Austin*, 805 F. Supp. 1007, 1025 (S.D. Fla. 1992). The FAC fails to allege facts meeting this standard.

Christopher J. Tyson (VA Bar No. 81553)
Michelle C. Pardo (admitted pro hac vice)
John M. Simpson (admitted pro hac vice)
Duane Morris LLP
505 9th Street, NW, Suite 1000
Washington, DC 20004
Tel:   (202) 776-7851
Fax:  (202) 478-2620
cjtyson@duanemorris.com
mcpardo@duanemorris.com
jmsimpson@duanemorris.com

*Attorneys for Defendant SeaWorld Parks & Entertainment, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

*/s/ Christopher J. Tyson*
Christopher J. Tyson

*Attorney for Defendant SeaWorld Parks & Entertainment, Inc.*